1

2

3

4

5

6

7

8

9               IN THE UNITED STATES DISTRICT COURT

10              FOR THE EASTERN DISTRICT OF CALIFORNIA

11   ALAN WILLIAM STOUT,

12              Petitioner,              No. CIV S-02-1276 FCD JFM P

13        vs.

14   A.K. SCRIBNER, Warden,

15              Respondent.              FINDINGS AND RECOMMENDATIONS

16   _____/

17              Petitioner is a state prisoner proceeding pro se with an application for a writ of

18   habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner challenges his 1997 conviction on two

19   counts of battery with serious bodily injury (Penal Code § 243, subd. (d) - counts one and three),

20   assault with a deadly weapon or force likely to produce great bodily injury (Penal Code § 245,

21   subd. (a)(1) - count two), first degree residential burglary (Penal Code § 459 - count four), and

22   two counts of intimidating a witness by force or threat (Penal Code § 136.1, subd. (c)(1) - counts

23   five and six).  In bifurcated proceedings, the jury also found true allegations that petitioner had

24   served a prior prison term (Penal Code § 667.5, subd. (b)), and had four prior convictions of

25   serious or violent felonies under the Three Strikes law (Penal Code § 1170.12).  Petitioner claims

26   that his constitutional rights were violated by ineffective assistance of counsel, failure to

1

1  adequately instruct the jury, an erroneous definition of reasonable doubt, imposing a sentence

2  under the Three Strikes Law where his prior convictions occurred prior to enactment of the Three

3  Strikes Law, application of the Three Strikes Law violated ex post facto laws, a violation of

4  petitioner's previous plea agreements, an erroneous jury admonition, and the dismissal of

5  petitioner's Shasta County habeas corpus petition.[1]  On November 18, 2004, petitioner filed a

6  traverse.[2]

7  FACTS[3]

8       The . . . charges against [petitioner] arose from separate
   incidents on December 20, 1996, and January 10, 1997.  His strikes
9  resulted from 1991 convictions in Contra Costa County.

10  A.  Count One - December 20, 1996:

11       The victim, Timothy Woodruff, lived in the small
    community of Round Mountain.  He had known [petitioner] for
12  several years.  The men had no problems with each other, although
    [petitioner] "did a minor assault" on Woodruff some years before.
13  Woodruff suffered from a seizure disorder which prevented him
    from driving, and seriously affected his memory.

14
15       Woodruff testified that on the morning of December 20,
    1996, Andy Tomas drove him to Mario Ramirez's place in
16  Woodruff's truck so he could deliver a phone message to Lupe, a
    man who lived on the property.  Woodruff spoke with Lupe, then
    walked back to the passenger side of the truck.  When [petitioner]
17  approached from the driver's side, Woodruff walked around the
    front, saying, "Hi, Al."  He denied provoking or touching
18  [petitioner].  [Petitioner] called Woodruff a "mother f'r," and

19

20     [1] This action is proceeding on the amended petition filed February 20, 2003.

21     [2] In his traverse, petitioner raised two new claims, alleging that the trial court erred in its
    jury instruction as to what constituted burglary, and the trial court erred in allowing the jury to
22  use petitioner's DMV packet as a means of identifying petitioner in adjudicating petitioner's
    prior convictions.  (Traverse at vi, 47.)  A traverse is not the proper pleading to raise additional
23  grounds for relief.  See Cacoperdo v. Demosthenes, 37 F.3d 504, 507-08 (9th Cir.1995).  In
    general, claims not raised in the petition are not cognizable on appeal.  See United States v.
24  Allen, 157 F.3d 661, 667 (9th Cir.1998) (citing Cacoperdo, 37 F.3d at 507).  Thus, this court has
    not reviewed these claims.

25     [3] The facts are taken from the opinion of the California Court of Appeal for the Third
    Appellate District in People v. Stout, No. C031626 (July 26, 2000), a copy of which is attached
26  as Exhibit A to Respondent's Answer, filed January 13, 2004.

began hitting him with his fists.  Woodruff put up his arms in defense, but sustained blows to the arms and face.  He tried to run to the passenger door of the truck, but [petitioner] caught him and continued the assault.  Woodruff fell down, and recalls being dragged into the truck.  On cross-examination, Woodruff acknowledged he might have had a couple of beers that morning, but stated he was not drunk.

Tomas testified that he and [petitioner] were not getting along at the time of this incident.  He drove Woodruff to Ramirez's on the afternoon of December 20, not in the morning.  Tomas said Woodruff spoke to Ramirez, not Lupe.  At that point, [petitioner] came out of the house, and yelled something about a truck.  Without provocation, he started punching Woodruff in the head and body with his fists.  Woodruff raised his arms to protect himself.  [Petitioner] hit Woodruff at least six times, and a few more times after he was on the ground.  According to Tomas, [petitioner] picked up a splitting maul, and threatened to throw it at him through the truck window.  He said something about Tomas having called the police on him.  Ramirez intervened, and [petitioner] dropped the maul.  When [petitioner] approached Woodruff a second time, Pam Preece came out of the house.  She picked up the maul to hit [petitioner].  When he turned on her, she dropped the maul and ran into the house.  [Petitioner] then hit Woodruff a few more times while he was on the ground.

Ramirez gave a different version of the events.  [Petitioner] was leaving Ramirez's place when Tomas and Woodruff drove up.  While [petitioner] was talking with Tomas, Woodruff got out of the truck, approached [petitioner], and pushed him back twice with his chest.  The second time, it looked like Woodruff was going to fight [petitioner].  [Petitioner] hit Woodruff once in the jaw and once in the body.  Woodruff, who was drunk, fell to the ground.

Tomas drove Woodruff to Hill Country Clinic, then to Mercy Medical Center.  Woodruff suffered fractures of the arm, wrist, elbow, and two fingers, two black eyes, and three facial fractures.

The clinic nurse reported the incident to sheriff's dispatch around 4:30 p.m.  Shasta County Deputy Marian Moore spoke with Woodruff a little after 5:00 p.m.  He had been drinking, and there was a strong odor of alcohol in the room and on his breath.  Clinic records indicated Woodruff had been drinking all day.  Deputy Moore recalled that Woodruff had reported problems with [petitioner] on at least two other occasions.  Woodruff told her he had called her department the day before to report he might be in danger from [petitioner].  He explained he had gone to collect a debt from Ramirez.  [Petitioner] approached Woodruff saying, "You fucked up my truck," and began punching and kicking him.

B.  Counts Two Through Six - January 10, 1997:

The victims, Michael Allen and his 10-year-old son Bobby, were staying with Ron Olson in Round Mountain.  Allen had known [petitioner] for 15 to 20 years, and they had their "ups and downs."  However, Allen had not seen [petitioner] in over a month. Because [petitioner] had attacked some of Allen's friends and acquaintances, he thought the same thing might happen to him.

Allen and Bobby were asleep on couches in the front room, when Allen heard the back door open in the middle of the night. He started to look, but received two blows to the head. Allen jumped to his feet, and saw [petitioner] with a steel bar.  The two men struggled while Allen grabbed for the bar.  When Allen yelled for Olson, Bobby woke up and tried to pull [petitioner] off his father.  While Allen was searching for Bobby's baseball bat, [petitioner] hit him again with the bar, splitting the back of his head.

The fight stopped when Allen got hold of the weapon. Olson started into the room, but [petitioner] told him to stay where he was.  Figuring the three of them could handle [petitioner], Allen let him reclaim the steel bar.  [Petitioner] put it in his pocket, and backed toward the front door.  He said he attacked Allen because Allen turned him in for beating up 62-year-old Dace Durby. [Petitioner] also claimed Allen was messing with his wife.  He called Allen a "low life," and spit on him.  [Petitioner] warned all three that if they said anything, or turned him in, he would come back and kill them.  Bobby's testimony was consistent with his father's.

Allen was treated at Redding Medical Center.  He suffered a fractured bone in his forearm, and lacerations of the face and back of the head.

Allen explained the Durby incident at trial.  In late November 1996, Allen rode with [petitioner] to Ramirez's.  At some point, [petitioner] started driving erratically toward Durby's place, saying he was going to shoot and stab the old man.  Allen knew there were problems between the two.  When the car broke down, [petitioner] got out and started up Durby's road on foot. Allen was able to restart the car, and drive to a friend's house.  The friend's wife called the police.  Allen was afraid for Durby because he had "seen how Al gets radical with people before."  Luckily, Durby was not home, and nothing happened to him that day.

C.  Prior Convictions:

In the 1991 case, [petitioner] pleaded no contest to two counts of assault with a firearm on a peace officer (§ 245, subd. (d)(1)), one count of assault with a deadly weapon (§ 245, subd.

1    (a)(2)), and one count of discharging a firearm in a grossly
     negligent manner (§ 246.3).  He admitted the personal use of a
2    firearm with respect to each count.  (§ 12022.5.)  The assaults
     involved three separate victims, two of whom were police officers.

3

4  (People v. Stout, slip op. at 2-6 (hereafter "Opinion.")

5                                   ANALYSIS

6  I.  Standards for a Writ of Habeas Corpus

7         Federal habeas corpus relief is not available for any claim decided on the merits in

8  state court proceedings unless the state court's adjudication of the claim:

9         (1) resulted in a decision that was contrary to, or involved an
          unreasonable application of, clearly established Federal law, as
10         determined by the Supreme Court of the United States; or

11         (2) resulted in a decision that was based on an unreasonable
          determination of the facts in light of the evidence presented in the
12         State court proceeding.

13  28 U.S.C. § 2254(d).

14         Under section 2254(d)(1), a state court decision is "contrary to" clearly

15  established United States Supreme Court precedents if it applies a rule that contradicts the

16  governing law set forth in Supreme Court cases, or if it confronts a set of facts that are materially

17  indistinguishable from a decision of the  Supreme Court and nevertheless arrives at different

18  result.  Early v. Packer, 537 U.S. 3, 7 (2002) (citing Williams v. Taylor, 529 U.S. 362, 405-406

19  (2000)).

20         Under the  "unreasonable application" clause of section 2254(d)(1), a federal

21  habeas court may grant the writ if the state court identifies the correct governing legal principle

22  from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the

23  prisoner's case.  Williams, 529 U.S. at 413.  A federal habeas court "may not issue the writ

24  simply because that court concludes in its independent judgment that the relevant state-court

25  decision applied clearly established federal law erroneously or incorrectly.  Rather, that

26  application must also be unreasonable."  Id. at 412; see also Lockyer v. Andrade, 538 U.S. 63,

123 S.Ct. 1166, 1175 (2003) (it is "not enough that a federal habeas court, in its independent review of the legal question, is left with a 'firm conviction' that the state court was 'erroneous.'")

The court looks to the last reasoned state court decision as the basis for the state court judgment.  Avila v. Galaza, 297 F.3d 911, 918 (9th Cir. 2002).  Where the state court reaches a decision on the merits but provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether habeas corpus relief is available under section 2254(d).  Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2000).

II.  Petitioner's Claims

A.  Ineffective assistance of counsel

Petitioner claims he was subject to ineffective assistance of counsel because trial counsel failed to:

1.  object to the admission of evidence to show motive;

2.  request to exclude or move to strike;

3.  move for a mistrial when the jury was exposed to the volunteered bad conduct/character evidence regarding petitioner.

4.  request instructions limiting the evidentiary effect of petitioner's prior bad conduct.

5.  object to the prosecution's closing argument concerning the Woodruff battery.

6.  pursue a substantial defense with respect to the witness intimidation counts when counsel "ignored a strong argument for reasonable doubt based on an evidentiary conflict, in favor of an unsupported legal argument that essentially [conceded] guilt." (Pet.'s P&A at 12.) The court will address these claims seriatim.

In order to prevail on a claim of ineffective assistance of counsel, petitioner must show two things, an unreasonable error and prejudice flowing from that error.  First petitioner must show that, considering all the circumstances, counsel's performance fell below an objective standard of reasonableness.  Strickland v. Washington, 466 U.S. 688 (1984).  The court must

1   determine whether in light of all the circumstances, the identified acts or omissions were outside

2   the wide range of professional competent assistance.  Id. at 690.  "Review of counsel's

3   performance is highly deferential and there is a strong presumption that counsel's conduct fell

4   within the wide range of reasonable representation."  United States v. Ferreira-Alameda, 815

5   F.2d 1251 (9th Cir. 1986).

6           Second, petitioner must prove prejudice.  Strickland at 693.  To demonstrate

7   prejudice, petitioner must show that "there is a reasonable probability that, but for counsel's

8   unprofessional errors, the result of the proceeding would have been different."  Id. at 694.  A

9   reasonable probability is "a probability sufficient to undermine confidence in the outcome."  Id.

10  The focus of the prejudice analysis is on "whether counsel's deficient performance renders the

11  result of the trial unreliable or the proceeding fundamentally unfair."  Lockhart v. Fretwell, 506

12  U.S. 364, 372 (1993).

13          1.  Admission of evidence to show motive

14          The trial court held an in limine hearing prior to trial where the prosecutor

15  explained facts of petitioner's prior conduct, offered to explain petitioner had a motive for

16  attacking Michael Allen.  (RT 7-8.)  Defense counsel objected, stating he felt these facts were

17  being offered under a theory of bootstrapping and asked if the complaints were so serious why

18  were charges not filed.  (RT 9-10.)  Defense further objected that the admission of this negative

19  information would deprive his client of a fair trial.  (RT 10.)  After a brief discussion, the trial

20  court ruled that the testimony was relevant on motivation.  (RT 19.)  Defense counsel agreed

21  with the trial court's analysis (RT 10) and, after the court ruled on the admission of this evidence,

22  conceded the facts were relevant.  (RT 19.)

23          Petitioner complains that trial counsel's concession as to relevance rendered his

24  representation ineffective and also assails trial counsel's prejudice argument.  However, the

25  record reflects that trial counsel objected to the admission of the evidence and his objection was

26  overruled.  The state appellate court appropriately applied the Strickland standard set forth above,

                                                    7

1 finding petitioner had not demonstrated prejudice by the admission of testimony about the events

2 that prompted Allen to call the police. (Opinion at 10.) "The uncontradicted evidence shows

3 [petitioner] entered Ron Olson's house uninvited in the middle of the night, and began hitting

4 Allen with a steel bar while he was sleeping. Hence, it is not reasonably probable the result

5 would have been different had defense counsel persuaded the court to exclude the evidence in

6 question." (Opinion at 11.) Based on this record, the court cannot find that the state court's

7 ruling was contrary to or an unreasonable application of Supreme Court authority.

8         2. Failure to exclude or move to strike

9         Petitioner contends, in conclusory fashion, that he "reviewed the testimony of half

10 the trial witnesses, citing many additional items that should have been excluded before hand or

11 stricken afterwards." (Pet.'s P&A at 11.) Petitioner provides no factual or legal support, and

12 does not set forth which witness' testimony he finds objectionable, and fails to show how the

13 witness' testimony affected his trial. His conclusory allegations do not warrant relief. See Jones

14 v. Gomez, 66 F.3d 199, 204 (9th Cir. 1995) (quoting James v. Borg, 24 F.3d 20, 26 (9th Cir.

15 1994) ("It is well-settled that '[c]onclusory allegations which are not supported by a statement of

16 specific facts do not warrant habeas relief'")).

17         However, petitioner raised this claim on direct appeal where he contended trial

18 counsel was ineffective for failing to exclude or moving to strike certain bad conduct/character

19 evidence which witnesses unexpectedly volunteered. The state appellate court found petitioner

20 had failed to demonstrate Strickland prejudice:

21           it is not reasonably probable the jury would have reached a
          different result if defense counsel had been successful in striking

22           the challenged testimony. (Citation omitted.) The evidence
          against [petitioner] was overwhelming on all counts. He brutally

23           attacked Woodruff with his fists and feet, leaving the victim with
          fractures of the arm, wrist, elbow, fingers, and face. [Petitioner]

24           entered Ron Olson's home uninvited, beat Allen bloody with a
          steel bar, and threatened Allen and his son with death if they

25           reported what had happened.

26 (Opinion at 14-15.) The state court appropriately applied Supreme Court precedent and did not

1  render an opinion that was contrary to or an unreasonable application of Supreme Court

2  authority.  This claim should also be denied.

3         3.  Failure to move for a mistrial

4        Petitioner further contends, again in conclusory fashion, that he suffered

5  ineffective assistance of trial counsel when trial counsel failed to move for a mistrial due to the

6  extent of prejudicial evidence.  (Pet.'s P&A at 11.)  Petitioner does not identify the evidence he

7  deems to be prejudicial.  Petitioner's claim is vague and conclusory and should be denied on that

8  basis.  <u>See</u> <u>Jones v. Gomez</u>, 66 F.3d at 204.  Even considered on the merits, petitioner is not

9  entitled to relief, as he has failed to demonstrate that a motion for mistrial would have been

10  granted, thus failing the prejudice prong of <u>Strickland</u>.  Indeed, the state appellate court found it

11  was "not reasonably likely that the court would have granted a motion for mistrial, given the

12  overwhelming evidence of [petitioner's] guilt."  (Opinion at 16.)

13         4.  Failure to request limiting instruction

14        Petitioner alleges trial counsel was ineffective for failing to request instructions to

15  limit the evidentiary effect of petitioner's prior bad conduct.  (Pet.'s P&A at 11, 13.)  The

16  California Court of Appeal denied this claim as follows:

17          [Petitioner] acknowledges that, in general, the court has no duty to
        instruct sua sponte that evidence of prior offenses is admitted for a

18          limited purpose.  [Citations omitted.]  He argues that defense
        counsel should have requested instructions to limit the jury's

19          consideration of the evidence of his prior conduct toward Dace
        Durby.  Because CALJIC No. 2.50 was "not literally applicable,"

20          [petitioner] suggests counsel "could have drawn on the principles
        and language expressed in CALJIC Nos. 2.90 and 2.50, as well as

21          Evidence Code section 1101" to formulate a special instruction.
        [Footnote omitted.]

22

23          Similar arguments were rejected in *People v. Hawkins* (1995) 10
        Cal.4th 920, 942, disapproved on other grounds in *People v.*

24          *Blakely* (2000) 23 Cal.4th 82, 89; and *People v. Bonilla* (1985) 168
        Cal.App.3d 201, 206, the courts deferring to defense counsel's

25          likely tactical decision to avoid emphasizing the other offenses.
        [Citation omitted.]  [Petitioner] attempts to distinguish the present

26          case by arguing "there could have been no reasonable tactic of de-
        emphasis, where the evidence at issue had been admitted

1
2
3
4

> throughout the trial; its repetition assured emphasis." That
> [petitioner] might have taken a different approach with the wisdom
> of hindsight does not detract from our obligation to apply
> deferential scrutiny in the circumstances of this case.  We therefore
> conclude [petitioner] failed to establish defense counsel provided
> ineffective assistance in not requesting a limiting instruction.

5   (Opinion at 16-18.)  Such an application of <u>Strickland</u> was not contrary to nor an unreasonable

6   application of Supreme Court authority.  Moreover, petitioner has failed to demonstrate that had

7   trial counsel sought such a limiting instruction that his request would have been granted or that

8   the outcome of the case would have changed.  In light of the overwhelming evidence noted

9   above, it is unlikely the outcome would have changed.  Thus, petitioner also fails the prejudice

10  prong of <u>Strickland</u>.

11          5.  Prosecution's closing argument

12          Petitioner contends his trial counsel was ineffective because he failed to object to

13  the prosecution's closing argument concerning the Woodruff battery.  Petitioner argues that the

14  prosecutor improperly disputed petitioner's self-defense theory by contrasting Woodruff and

15  petitioner on an "aggressive personality scale."  (Pet.'s P&A at 12.)

16          The record reflects the prosecutor argued as follows:

17                  You saw him [Woodruff] on the stand, and your
        observations of him over and above what he actually said is there
18      for you to analyze and use in your determination of analysis of his
        testimony.
19
                        You saw his mannerisms, his actual apologetic nature.  I
20      mean he apologized about everything.  My memory is not good.  I
        have got this injury to my head.  That is his personality.  And part
21      of his personality is probably from drinking.  But you put all of that
        in the mix, and then try and tell me that he's the aggressor against
22      somebody like Al Stout.  Doesn't make sense.

23                      His personality is just not that of an aggressor.  You want to
        talk about aggressors, I'll leave it all . . . to the aside for a moment.
24

25  (RT 238-39.)

26  /////

1      The state appellate court rejected this claim:

2          We cannot say the prosecutor's argument was objectionable
       on any ground.  The comments regarding Woodruff's non-
3      aggressive personality were permissible inferences from the record.
       Moreover, the argument was justified in light of Ramirez's
4      testimony a drunken Woodruff incited the assault by pushing
       [petitioner].  Because no objection was warranted, we conclude
5      defense counsel was not ineffective.

6   (Opinion at 18-19.)

7          An attorney's failure to make a meritless objection or motion does not constitute

8   ineffective assistance of counsel.  Jones v. Smith, 231 F.3d 1227, 1239 n.8 (9th Cir.2000) (citing

9   Boag v. Raines, 769 F.2d 1341, 1344 (9th Cir.1985)).  See also Rupe v. Wood, 93 F.3d 1434,

10  1445 (9th Cir.1996) ("the failure to take a futile action can never be deficient performance").

11  Because the prosecutor's comments were permissible, trial counsel was not ineffective for failing

12  to object.  Thus, the state court's opinion on this claim was not contrary to or an unreasonable

13  application of Supreme Court authority.

14          6.  Failure to pursue a substantial defense

15          Petitioner alleges trial counsel failed to pursue a substantial defense with respect

16  to the witness intimidation counts when counsel "ignored a strong argument for reasonable doubt

17  based on an evidentiary conflict, in favor of an unsupported legal argument that essentially

18  [conceded] guilt."  (Pet.'s P&A at 12.)

19          The state court addressed petitioner's claim as follows:

20          As we explained, counts five and six charged [petitioner]
       with intimidating Michael and Bobby Allen by force or threat in
21      violation of section 136.1, subdivision (c)(1).  [Petitioner] contends
       defense counsel's closing argument on those counts ignored a
22      substantial defense theory, and effectively conceded guilt, thereby
       denying [petitioner] effective assistance of counsel.
23
           Specifically, [petitioner] explains his analysis of the
24      evidence:  "Michael Allen testified to the commission of the
       offense charged in counts 5 and 6.  But he claimed the threat was
25      addressed to Bobby and Olson, as well as himself.  Olson,
       however, heard no threat at all.  Bobby recalled receiving a single
26      threat, but it did not include a warning about reporting the incident.

He heard [petitioner] say some words to Michael and to Olson, but did not recall any threats to them, nor anything addressed to all three.  Interviewed by a defense investigator four months after the incident, seven months before trial, Bobby did not recall any words spoken during the incident."  [Petitioner] then argues defense counsel was ineffective because he missed the opportunity to argue to the jury that [petitioner] failed to communicate his threat to Bobby.  In addition, [petitioner] notes that by arguing the threat was "an incidental comment that the [petitioner] is making as he leaves the area," defense counsel effectively conceded [petitioner's] guilt on both count five and count six.  Because the evidence of a qualifying threat was in conflict, [petitioner] argues it is reasonably probable that had counsel argued the issues competently, the jury would not have found him guilty of intimidation in either count.

We again reject [petitioner's] attempt to second-guess defense counsel, and on this silent record defer to counsel's assessment of the best approach at the close of trial.  [Citation omitted.]  Michael Allen's account of the assault was clear and detailed.  Eleven-year-old Bobby was emotional when describing [petitioner's] threats.  Defense counsel could have reasonably concluded a jury would attribute any inconsistent testimony to Bobby's age and emotional state at the time of the assault and at trial.  In these circumstances, it would have been reasonable for defense counsel to avoid as useless any attempt to emphasize technical flaws in Bobby's testimony.  That there was little else on which to base a defense does not mean defense counsel was ineffective.

We therefore reject [petitioner's] claim the result would have been different had defense counsel delivered a better closing argument.  The claim is based on the questionable premise there were substantial and unreconcilable conflicts in the evidence [petitioner] threatened both Michael and Bobby Allen.  We conclude [petitioner] failed to sustain the burden of showing prejudice as a "'demonstrable reality.'"  (*People v. Williams, supra,* 44 Cal.3d at p. 937.)

(Opinion at 19-20.)

At trial, when asked whether petitioner said anything after the fight was over, Michael Allen testified that petitioner "said that if we said anything, he'd come back and kill us all."  (RT 82.)  Bobby Allen testified that petitioner said "If you don't stop, I'll kill you too." (RT 66.)  Bobby Allen was visibly upset when describing petitioner's threat.  (RT 65-66.)

/////

12

1  Ronald Olson, who entered the room after Allen had been injured, testified that petitioner made

2  no threats to Olson.  (RT 153.)

3        Petitioner has failed to demonstrate that had trial counsel honed in on the variance

4  in testimony between Michael Allen and Bobby Allen that the outcome on these counts would

5  have been different.  The jury could choose to believe Michael Allen's account of the events.

6  After watching Bobby Allen's emotional testimony, the jury might not be receptive to defense

7  counsel's attempt to discredit Bobby Allen's statement.

8        Trial counsel's failure to highlight this technical difference in testimony did not

9  fall outside the bounds of reasonably competent professional assistance, nor has petitioner shown

10  any prejudice therefrom.  Thus, this claim should also be denied.

11      B.  Failure to adequately instruct the jury

12        Petitioner contends that his due process rights were violated by the trial court's

13  failure to adequately instruct the jury with CALJIC No. 9.12 (Felony Battery) to cross-reference

14  No. 5.30 (Self-Defense Against Assault) and to apply the proper standard of review.  (Pet.'s P&A

15  at 14.)  Petitioner argues that the failure to explain self-defense was not harmless because there

16  was evidence to support a self-defense theory.  (Id. at 15.)

17        The trial court instructed the jury with CALJIC No. 9.12, but not CALJIC No.

18  5.30.  (RT 278-79; CT 117.)  CALJIC No. 9.12 sets forth the elements for the crime of battery

19  with serious bodily injury and states in pertinent part:

20          The application of physical force applied to a person of another is
        not unlawful when done in lawful self-defense.  The burden is on

21          the People to prove that the application of force was not in lawful
        self-defense.

22

23  (RT 279; CT 117.)  CALJIC No. 5.30 provides:

24          It is lawful for a person who is being assaulted to defend himself
        from attack if, as a reasonable person, he has grounds for believing

25          and does believe that bodily injury is about to be inflicted upon
        him.  In doing so, that person may use all force and means which

26          he believes to be reasonably necessary and which would appear to

1    a reasonable person in the same or similar circumstances, to be
     necessary to prevent the injury which appears to be imminent.
2

3    (Id.)

4           The California Court of Appeal found the instructional omission harmless.

5    (Answer, Ex. A, at 22-26.)

6           The omitted instruction would have informed the jury that
            [petitioner] was justified in using "all force and means which [he]
7           believes to be reasonably necessary and which would appear to a
            reasonable person, in the same or similar circumstances, to be
8           necessary. . . ."  The record shows Woodruff suffered serious
            injuries as a result of his encounter with [petitioner].  Woodruff's
9           physical injuries were consistent with the testimony of Woodruff
            and Tomas.  Those injuries were inconsistent with Ramirez's
10          testimony [petitioner] hit Woodruff only twice after being pushed,
            and thus cast doubt on Ramirez's assertion Woodruff instigated the
11          conflict.  There is strong evidence [petitioner] used excessive and
            unreasonable force under the circumstances, regardless of whether
12          he was in fact provoked by Woodruff's actions.  Thus, it is not
            reasonably probable the jury would have accepted [petitioner's]
13          self-defense claim, even if they had been instructed in accordance
            with CALJIC No. 5.30.
14

15   (Opinion at 24.)  The state appellate court went on to review the instructional error under

16   Chapman to determine whether the error had violated petitioner's constitutional rights.  Chapman

17   v. California, 386 U.S. 18, 24 (1966).  The state court again found the error to be harmless:

18          [Petitioner] acknowledges the failure to instruct on CALJIC
            No. 5.30 "affects only an 'aspect of an element' – here, the
19          unlawfulness element – as opposed to entirely removing the
            element from the jury's consideration."  "An instruction that omits
20          a required definition of or misdescribes an element of an offense is
            harmless only if 'it appears "beyond a reasonable doubt that the
21          error complained of did not contribute to the verdict obtained."'
            (People v. Harris (1994) 9 Cal.4th 407, 424 . . . , quoting
22          [Chapman, supra, 386 U.S. at p. 24.])  'To say that an error did not
            contribute to the verdict is . . . to find that error unimportant in
23          relation to everything else the jury considered on the issue in
            question, as revealed in the record.'"  (People v. Mayfield (1997)
24          14 Cal.4th 668, 774, quoting Yates v. Evatt (1991) 500 U.S. 391,
            403 [114 L.Ed.2d 432, 449] (Yates).)  The appellate court must ask
25          "whether the force of the evidence presumably considered by the
            jury in accordance with the instructions [as given] is so
26          overwhelming as to leave it beyond a reasonable doubt that the

                                          14

1    verdict resting on that evidence would have been the same in the
     absence of the [instructional error]." (*Yates, supra*, 500 U.S. at pp.
2    403-405 [114 L.Ed.2d at pp. 448-449], disapproved on other
     grounds in *Estelle v. McGuire* (1991) 502 U.S. 62, 72, fn. 4 [115
3    L.Ed.2d 385, 399].)

4            Here, the jury was instructed "[t]he application of physical
     force applied to a person of another is not unlawful when done in
5    lawful self-defense", that is, it could consider the question of self-
     defense.  The error in omitting the further explanation that lawful
6    self-defense involves "all force and means which [petitioner]
     believes to be reasonably necessary and which would appear to a
7    reasonable person, in the same or similar circumstances, to be
     necessary" to prevent imminent injury was "unimportant in relation
8    to everything else the jury considered" in finding [petitioner] guilty
     in count one.  (CALJIC No. 5.30 (6th ed. 1996); *Yates, supra*, 500
9    U.S. at p. 403 [114 L.Ed.2d at p. 449].)  As explained, the jury
     considered the evidence [petitioner] acted in self-defense as
10   described by Ramirez, the different version of the events described
     by Woodruff and Tomas, and the serious injuries described by
11   Woodruff.  Taken alone, the severity of the injuries belie any
     possibility the jury would have found [petitioner] acted with
12   reasonable force – even under Ramirez's version of the
     circumstances leading to [petitioner's] use of force.

13

14   (Opinion at 25-26.)

15          It is well established that a criminal defendant is entitled to adequate instructions

16   on the defense theory of the case.  See Conde v. Henry, 198 F.3d 734, 739 (9th Cir.2000) (citing

17   Schmuck v. United States, 489 U.S. 705 1989).  However, a state trial court's failure to give an

18   instruction does not alone raise a ground cognizable in a federal habeas corpus proceedings.  See

19   Dunckhurst v. Deeds, 859 F.2d 110, 114 (9th Cir.1988).  The error must so infect the trial that

20   the defendant was deprived of the fair trial guaranteed by the Fourteenth Amendment.  See id.

21   Whether a constitutional violation has occurred will depend upon the evidence in the case and

22   the overall instructions given to the jury.  See Duckett v. Godinez, 67 F.3d 734, 745 (9th

23   Cir.1995).  After all, due process does not require that an instruction be given unless the evidence

24   supports it.  See Hopper v. Evans, 456 U.S. 605, 611 (1982); Miller v. Stagner, 757 F.2d 988,

25   993 (9th Cir.), amended, 768 F.2d 1090 (9th Cir.1985), cert. denied, 475 U.S. 1048 (1986).

26   /////

1    An examination of the record is required to see what was given and what was

2  refused and whether the given instructions adequately embodied the defendant's theory.  See

3  United States v. Tsinnijinnie, 601 F.2d 1035, 1040 (9th Cir.1979), cert. denied, 445 U.S. 966

4  (1980).

5    Under California law, self-defense negates the mental state element of the crime

6  of assault, and the prosecution has the burden of disproving self-defense beyond a reasonable

7  doubt once substantial evidence exists that the defendant used self-defense.  People v. Banks, 67

8  Cal.App.3d 379, 383-384, 137 Cal.Rptr. 652 (1976).  Here, defense counsel did not request the

9  self-defense instruction (CALJIC 5.30).  (RT 229-30.)  However, the trial court accurately

10  instructed the jury that the use of force was not unlawful when done in lawful self-defense and

11  stated that the prosecution must prove that the application of force was not in lawful self-defense.

12  (RT 279.)  Defense counsel also argued that petitioner acted in self-defense in his closing

13  argument.  (RT 254-55.)

14    The state appellate court affirmed the trial court's decision and found that there

15  was strong evidence petitioner used excessive and unreasonable force under the circumstances,

16  regardless of whether petitioner was provoked by Woodruff's actions.  In addition, the state

17  appellate court found Woodruff's physical injuries were inconsistent with Ramirez's testimony

18  that petitioner hit Woodruff only twice after being pushed, casting doubt on Ramirez's assertion

19  that Woodruff was the aggressor.  Thus there was no substantial evidence to support a finding

20  that petitioner acted with a reasonable belief that it was necessary to use the force petitioner used

21  on Woodruff sufficient to justify the giving of a self-defense instruction.

22    A challenge to a jury instruction solely as an error under state law does not state a

23  claim cognizable in federal habeas corpus proceedings.  See Estelle v. McGuire, 502 U.S. 62,

24  71-72 (1991).  Rather, this court must defer to the state court's interpretation of state law.  Hicks

25  v. Feiock, 485 U.S. 624, 629 (1988).  The appellate court would require substantial evidence that

26  Woodruff instigated the conflict in such a way as to require a forceful response to instruct the

16

1  jury on self-defense, or, put another way, that Woodruff's actions justified the responsive actions

2  of petitioner.  From the record, it was not unreasonable for the trial court judge to find that

3  Woodruff's injuries were consistent with the testimony of Woodruff and Tomas or that

4  Woodruff's injuries were inconsistent with Ramirez's testimony that petitioner hit Woodruff

5  only twice after being pushed.  It was therefore not unreasonable for the trial court to find the

6  failure to give CALJIC 5.30 was harmless error.  This court must defer to the appellate court's

7  interpretation of the state law.  This claim should be denied.

8          To the extent that petitioner argues trial counsel was ineffective for failing to seek

9  a self-defense jury instruction, petitioner's claim also fails.  Given the excessive force petitioner

10  used against Woodruff, it is unlikely the jury would have found petitioner acted in lawful self-

11  defense.  Thus, petitioner could not demonstrate the prejudice prong under Strickland, supra.

12      C.  Reasonable doubt

13          Petitioner alleges that the trial court's reasonable doubt instruction (CALJIC 2.90)

14  violated his due process rights because it fails to "define the meaning of 'abiding conviction of

15  proof beyond a reasonable doubt,' and to distinguish this standard from that of 'clear and

16  convincing evidence.'" (Petition at 6.)  This claim was rejected without comment by the

17  California Court of Appeal.  (Answer, Ex. D.)

18          The Ninth Circuit rejected the same argument in Lisenbee v. Henry, 166 F.3d 997,

19  999 (9th Cir. 1999).  Because the court of appeal's decision was not contrary to or an

20  unreasonable application of federal law, petitioner's third claim should be denied.

21      D.  Three Strikes Law

22          In his fourth and fifth claims, petitioner contends that imposing a sentence under

23  the Three Strikes Law where his prior convictions occurred prior to enactment of the Three

24  Strikes Law violated his constitutional rights, and that application of the Three Strikes Law

25  violated Ex Post Facto laws.

26  /////

1    These claims involve essentially an interpretation of state sentencing law. "[I]t is

2    not the province of a federal habeas court to reexamine state court determinations on state law

3    questions." Estelle v. McGuire, 502 U.S. at 67. Habeas corpus relief is unavailable for alleged

4    errors in the interpretation or application of state sentencing laws by either a state trial or

5    appellate court, unless the error resulted in a complete miscarriage of justice. Hill v. United

6    States, 368 U.S. at 428; Hendricks v. Zenon, 993 F.2d 664, 674-75 (9th Cir. 1993). So long as a

7    state sentence "is not based on any proscribed federal grounds such as being cruel and unusual,

8    racially or ethnically motivated, or enhanced by indigency, the penalties for violation of state

9    statutes are matters of state concern." Makal v. State of Arizona, 544 F.2d 1030, 1035 (9th Cir.

10   1976). Thus, "[a]bsent a showing of fundamental unfairness, a state court's misapplication of its

11   own sentencing laws does not justify federal habeas relief." Christian v. Rhode, 41 F.3d 461,

12   469 (9th Cir. 1994).

13   Applying these principles in federal habeas proceedings, the Ninth Circuit has

14   specifically refused to consider alleged errors in the application of state sentencing law. See,

15   e.g., Miller v. Vasquez, 868 F.2d 1116 (9th Cir. 1989). Thus, in Miller, the court refused to

16   examine the state court's determination that a defendant's prior conviction was for a "serious

17   felony" within the meaning of the state statutes governing sentence enhancements. Id. at 1118-

18   19. The court did not reach the merits of the petitioner's claim, stating that federal habeas relief

19   is not available for alleged errors in interpreting and applying state law. Id. (quoting Middleton

20   v. Cupp, 768 F.2d at 1085).

21   Petitioner did not raise this claim on direct appeal, but raised it in his state petition

22   for writ of habeas corpus. The California Court of Appeal denied this claim without comment.

23   (Answer, Ex. E.) However, numerous courts in the state of California have determined that prior

24   felony convictions which predate the effective date of the Three Strikes Law are "strikes" within

25   the meaning of that law. See e.g., Sipe, 36 Cal. App. 4th at 477-479; People v. Moenius, 60 Cal.

26   App. 4th 820, 827 (1998); Gonzales v. Superior Court, Stanislaus County, 37 Cal. App. 4th 1302,

1    1306-1311 (1995); People v. Diaz, 41 Cal. App. 4th 1424, 1428-29 (1996);  People v. Green

2    (1995) 36 Cal. App.  4th 280, 283 (1995).  Federal courts are "bound by a state court's

3    construction of its own penal statutes."  Aponte v. Gomez, 993 F.2d 705, 707 (9th Cir. 1993).

4    This court must defer to California's interpretation of the Three Strikes law unless its

5    interpretation is "untenable or amounts to a subterfuge to avoid federal review of a constitutional

6    violation."  Oxborrow v. Eikenberry, 877 F.2d 1395, 1399 (9th Cir. 1989.)  There is no evidence

7    of that here.

8            Moreover, to the extent that petitioner has stated a federal constitutional claim, he

9    is not entitled to relief.  The application of a sentencing enhancement based upon a prior

10   conviction does not violate the Ex Post Facto Clause as long as the statute was in effect before

11   the triggering offense was committed.  See United States v. Sorenson, 914 F.2d 173, 174 (9th

12   Cir.1990); United States v. Ahumada-Avalos, 875 F.2d 681, 683-84 (9th Cir.1989).  California's

13   Three Strikes law took effect on March 7, 1994, before petitioner committed the principal

14   offense on December 20, 1996.  Further, petitioner has failed to show that the state courts

15   committed an error resulting in a complete miscarriage of justice.  See Parke v. Raley, 506 U.S.

16   20, 27 (1992) ("we have repeatedly upheld recidivism statutes 'against contentions that they

17   violate constitutional strictures dealing with double jeopardy, ex post facto laws, cruel and

18   unusual punishment, due process, equal protection, and privileges and immunities'") (quoting

19   Spencer v. Texas, 385 U.S. 554, 560 (1967); United States v. Kaluna, 192 F.3d 1188, 1199 (9th

20   Cir. 1999) ("The Supreme Court and this court uniformly have held that recidivist statutes do not

21   violate the Ex Post Facto Clause if they are "on the books at the time the [present] offense was

22   committed.") (quoting Ahumada-Avalos, 875 F.2d at 683-84 (9th Cir. 1989) (per curiam); Witte

23   v. United States, 515 U.S. 389, 399 (1995) (recidivist statutes do not violate double jeopardy

24   because the enhanced punishment imposed for the later offense is not viewed as either a new

25   jeopardy or an additional penalty for the earlier crimes, but is instead a stiffened penalty for the

26   /////

1   latest crime, which is considered to be an aggravated offense because it is a repeat offense).

2   Accordingly, for all of these reasons, petitioner's fourth and fifth claims should be denied.

3       E.  Petitioner's Previous Plea Agreements

4           Petitioner contends that the state violated his plea agreements rendered in his prior

5   convictions because the use of his prior convictions to enhance his present sentence meant the

6   state retroactively increased the term to be imposed, which changed a factor of consideration to

7   petitioner's detriment.

8           It is well settled that when a guilty plea rests in any significant degree on the

9   promise or agreement of the prosecutor so that it can be said to be part of the inducement or

10  consideration for the plea, the promise must be fulfilled.  Santobello v. New York, 404 U.S. 257

11  (1971).  "Plea agreements are subject to contract-law standards of interpretation."  United States

12  v. Kamer, 781 F.2d 1380, 1387 (9th Cir.1986).  To determine whether a sentence complies with

13  the terms of a plea agreement, the court looks to what was reasonably understood by the

14  defendant when he entered his plea.  Id.

15          However, petitioner has failed to demonstrate that his prior plea agreement

16  contained a promise that his convictions could not be used to enhance a subsequent sentence.

17  The record reflects that in his prior 1991 prosecution, petitioner admitted four counts and

18  received a mitigated sentence of four years.  (CT 47-49.)  Thus, the state court's denial of this

19  claim was not contrary to nor an unreasonable application of Santobello, supra.  Petitioner's sixth

20  claim should also be denied.

21      F.  Erroneous Jury Admonition

22          Petitioner alleges that his "Sixth Amendment right to [a] fair and impartial jury

23  was violated by the trial court's instruction to the jury that they had up to 5:00 maybe later, to

24  conclude deliberations."  (Pet.'s P&A at 29.)  The state appellate court denied this claim without

25  comment.  (Answer, Ex. E.)

26  /////

1    Whether the comments and conduct of a state trial judge infringe a defendant's

2 due process right to an impartial jury and fair trial turns upon whether "the trial judge's inquiry

3 would be likely to coerce certain jurors into relinquishing their views in favor of reaching a

4 unanimous decision." Locks v. Sumner, 703 F.2d 403, 406 (9th Cir.1983).  See also Jiminez v.

5 Myers, 40 F.3d 976, 979 -980 (9th Cir. 1993) (same).  A reviewing court considers whether the

6 court's actions and statements were coercive in the totality of the circumstances.  See Id. at

7 406-07 ("the inquiry by the judge must be viewed in light of the context in which it was made,

8 not in isolation") (citations omitted);  United States v. Seawell, 550 F.2d 1159, 1163 (9th

9 Cir.1977) ("the general test of whether a supplemental jury instruction is in error is to consider all

10 the circumstances to determine if the instruction was coercive") (citation omitted); Marsh v.

11 Cupp, 536 F.2d 1287, 1290 (9th Cir.1976) (test for jury coercion is " 'whether in its context and

12 under all the circumstances of this case the statement was coercive' ") (quoting Jenkins v. United

13 States, 380 U.S. 445 (1965)).

14    A review of the record reveals that the trial judge did not coerce the jury into

15 reaching a verdict.  On December 12, 1997, after petitioner was found guilty of all counts

16 charged, the trial court explained that prior conviction allegations were bifurcated for trial.  (RT

17 300.)  The court noted it was 4:00 p.m. on Friday, and gave the jury the opportunity to determine

18 whether it would consider the prior conviction allegations that afternoon or return on the

19 following Tuesday at 8:00 a.m. to do so.  (RT 301.)

> It's 4:00 o'clock.  It's Friday.  And I have discussed this with the attorneys.  We're willing to do it your way.  We're willing to take a brief recess now and try to finish that up this afternoon.  Might take us, all total, depending on how long you deliberate, up to 5:00 o'clock, or maybe later.
>
> The other choice would be to come back on Tuesday morning, early in the morning, at 8:00 o'clock, and do it at that time.  The [petitioner], as you can see is not here.  I can't ask him to waive his right to a jury trial on this issue.  It's a problem you are going to have to resolve.  I can't do it myself.  So can I have a show of hands as to how many would rather do it this afternoon?  Okay.  That seems to be a vast majority.

1   (RT 301.)  The jury began deliberations at 4:35 p.m.  (CT 96.)  The trial court was advised at

2   5:34 p.m. that afternoon that the jury had reached a verdict.  (CT 96.)  The jury found the special

3   allegations to be true.  (RT 330.)

4   　　　　　　The trial judge's comments were not coercive.  The judge gave the jury a choice

5   as to whether to continue deliberations that day or to begin anew on Tuesday.  In addition, the

6   judge estimated how long he thought it would take, but left open the possibility that the jury

7   might deliberate longer by stating  "up to 5:00 o'clock, or maybe later."  (RT 301.)  The jury

8   actually deliberated until 5:34 p.m.  (CT 96.)  Moreover, it was not unreasonable for the

9   deliberation on these special allegations to last an hour, because the prosecution was brief in

10  establishing petitioner's priors and defense counsel presented no evidence or argument to the

11  contrary.  (RT 305-18.)

12  　　　　　　Thus, the state court's denial of petitioner's seventh claim was not an

13  unreasonable application of United States Supreme Court authority.

14  　　G.  Dismissal of petitioner's Shasta County Habeas Corpus Petition

15  　　　　　　Finally, petitioner contends that the Shasta County Superior Court's dismissal of

16  his petition for writ of habeas corpus violated his Sixth and Fourteenth Amendment rights.

17  (Pet.'s P&A at 31.)  The Shasta County Superior Court denied petitioner's habeas petition on

18  July 19, 2001:

19  　　　　　　　[P]etitioner now presents a Petition for Writ of Habeas Corpus
    　　　　　　　which the court has reviewed.  In this extensive petition there are
20  　　　　　　　seven particularized bases for relief, each of which involves subject
    　　　　　　　matter which could have been presented at the time of the appeal.
21  　　　　　　　The Petition for Writ of Habeas Corpus is not available to a
    　　　　　　　defendant regarding contentions that could have been, but were
22  　　　　　　　not[,] raised on an appeal.  Nor is it available for further
    　　　　　　　consideration of claims that were raised and rejected on appeal.  (In
23  　　　　　　　re: Waltreus [1965] 62 C.2d 218, 225; In re:  Dixon [1953] 41
    　　　　　　　C.2d 756; In re:  Harris [1993] 5C.4th 813).
24
    　　　　　　　Accordingly, the petition is **denied** on its merits.
25

26  (Answer, Ex. D (emphasis in original).)

1    A writ of habeas corpus is available under 28 U.S.C. § 2254 only on the basis of

2    some transgression of federal law binding on the state courts.  See Peltier v. Wright, 15 F.3d 860,

3    861 (9th Cir. 1994); Middleton v. Cupp, 768 F.2d 1083, 1085 (9th Cir. 1985) (citing Engle v.

4    Isaac, 456 U.S. 107, 119 (1982)).  A federal writ is not available for alleged error in the

5    interpretation or application of state law.  See Estelle v. McGuire, 502 U.S. at 67-68; Park v.

6    California, 202 F.3d 1146, 1149 (9th Cir. 2000); Middleton, 768 F.2d at 1085.  Federal courts are

7    "bound by a state court's construction of its own penal statutes."  Aponte v. Gomez, 993 F.2d

8    705, 707 (9th Cir. 1993).  Alleged errors in state post-conviction process are not cognizable in

9    federal habeas review.  Franzen v. Brinkman, 877 F.2d 26 (9th Cir. 1989); see also Ortiz v.

10   Stewart, 149 F.3d 923, 939 (9th Cir. 1998); Gerlaugh v. Stewart, 129 F.3d 1027, 1045 (9th Cir.

11   1997).

12   Furthermore, "'state courts are the ultimate expositors of state law,' and we are

13   bound by the state's construction except when it appears that its interpretation is an obvious

14   subterfuge to evade the consideration of a federal issue."  Peltier, 15 F.3d at 862 (quoting

15   Mullaney v. Wilbur, 421 U.S. 684, 691 (1975) (construing state court judgment)).  There is no

16   evidence of subterfuge here; therefore, this court must accept the Shasta County Superior Court's

17   ruling.  Petitioner's eighth and final claim should also be denied.

18   In accordance with the above, IT IS HEREBY RECOMMENDED that

19   petitioner's application for a writ of habeas corpus be denied.

20   These findings and recommendations are submitted to the United States District

21   Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty

22   days after being served with these findings and recommendations, any party may file written

23   objections with the court and serve a copy on all parties.  Such a document should be captioned

24   "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

25   shall be served and filed within ten days after service of the objections.  The parties are advised

26   /////

1    that failure to file objections within the specified time may waive the right to appeal the District

2    Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

3    DATED:  June 3, 2005.

4

5                              UNITED STATES MAGISTRATE JUDGE

6

7    001

8    stou1276.157

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26